And we'll move right into our last appeal on our docket this week. It's Southern Coal Corporation v. Drummond Coal Sales and James Justice. H. Thomas Wells III is here for Southern Coal. John Hogue is here for Drummond. And Stephan Passantino is here for James Justice. And Mr. Wells, you may proceed. Good morning, your honors. May it please the court, my name is Trey Wells of the firm Starnes Davis Corey in Birmingham, Alabama, and I'm pleased to represent Drummond Coal Sales in this matter. We raised three errors of the district court in our appeal, all three of which are matters of law, all three of which are reviewed de novo. Those three errors are the district court's initial finding of ambiguity in the contract without relying on undisputed evidence of industry usage, which would eliminate that ambiguity. The second issue is the alternative argument that even if the ambiguity question is correct, the court completely failed to address at all the equitable reformation argument as to the contract. And the third argument is the failure to award attorney's fees. And I'm actually going to start with the third first, because regardless of whether there's no other error in the record, the failure to award attorney's fees we feel is clearly erroneous, even though it's a de novo standard. Attorney's fees obviously are only available if authorized by statute or contract. Here, they're authorized by two contracts. The underlying agreement between Drummond and Southern Coal has... Mr. Wells, both parties were found to have breached the contract, right? Yes, your honor. Okay, so Drummond succeeded on its claim for the minimum thoroughfare fees, and Southern Coal succeeded on its claim regarding the escalated fees. So if both parties were found to have breached the contract, then the court did not err by awarding Drummond attorney's fees. Is my understanding correct about that? That was the rationale that the district court used. We do believe it is error because the district court relied on a prevailing party analysis, citing a series of newer cases that went through a prevailing party analysis. But the difference between every single one of those cases and the contracts in this case, every single one of those contracts contain the words prevailing party. The two contracts here are the underlying agreement, section 16, that just says the defaulting party must pay the attorney's fees of the non-defaulting party for a variety of things, but includes any effort to collect pay. Now, that provision doesn't even necessarily need to have litigation to involve attorney's fees. There could be pre-suit demand letters, and then ultimately you get attorney's fees just for that. So the prevailing party analysis laid out by the district court wouldn't even make sense in that circumstance. The guarantee, section two, states that Mr. Justice agrees to pay all expenses, including without limitation, all reasonable fees and expenses of outside counsel incurred by Drummond in enforcing or asserting any of their respective rights under the guarantee. Under the guarantee, we got complete relief. There was no finding as to the guarantee that Drummond did not prevail wholly as to that issue, even at the prevailing party analysis applied. But neither of the contracts contain the words prevailing party. So it's just a pure contract interpretation issue. And in this case, we did receive relief. We did assert our rights under the guarantee. We did receive payment under the guarantee. And under the guarantee's language, attorney's fees are clearly awardable. Even if the prevailing party analysis did apply, the courts have not looked at, you have to prevail 100%. Partial prevailing applies. In this case, Southern Coal sued us for a refund of about $5 million and to have the entire contract eliminated. The end of the case, they ended up owing us almost $7 million and the contract was upheld. I think any reasonable juror or someone off the street, if you presented those facts and asked them who won the case, they would say Drummond prevailed in the case. But in any event, we don't think the prevailing party analysis was correct as a matter of law. Another issue of error is the threshold question of ambiguity. It's a question of law for the court. It does not become a question of fact until the court determines as a matter of law that the contract itself is ambiguous. We cited to the court the Hugo Boss case out of the Second Circuit that even where a contract does not define a particular term, industry usage will serve as the default rule to define specialized contract terms. The Beasley case that we cited out of the Southern District of New York similarly holds that evidence of custom and usage is properly considered prior to the evaluation of extrinsic evidence of intent. In that case, the court looked to industry usage evidence relating to the NASDAQ, analyst statements, statements by the president of the Chicago Mercantile Exchange and found that based on that extrinsic evidence of industry usage, there was no ambiguity and therefore the parole evidence as to the party's approval. The district court here apparently was under the impression that industry usage evidence would only become relevant if there was a finding of ambiguity. In the summary judgment proceeding, Southern Coal moved to strike Drummond's evidence of industry usage and its expert report that listed out all the various coal publications that set forth that history. And the district court in its summary judgment order denied that motion and the basis for denial was because I had found the contract ambiguous, this industry usage evidence is therefore relevant and I will consider it. Under New York law, your honors, that is error. The industry usage evidence is to be considered at the threshold question of ambiguity and the district court just failed to do that. In this case, the industry usage evidence was completely undisputed. Southern Coal submitted no evidence of any industry usage, no evidence really of anything happening in real time at Southern Coal. Southern Coal's only evidence in the case was during litigation testimony as to what they believe the contract meant. That is parole evidence that should not have been considered until a finding of ambiguity and we feel like the finding of ambiguity itself as a matter of law was incorrect because the industry usage eliminated any ambiguity. Alternatively, we presented to the district court that even if the district court found that the proper interpretation of the language was specifically the peak downs price, that the parties were mutually mistaken in selecting that terminology and trying to effectuate their intent. The evidence is undisputed that leading up to the contract, the original proposed escalator was just a flat two percent every year regardless of any extraneous circumstances. Shortly before the contract was signed, Jim Justice requested that the escalator be changed to tie it to something that reflects current metallurgical coal pricing and that's where the peak downs reference came in. The parties at all times intended there to be some escalator tied to market prices. Jay Justice testified that it was sort of a share the wealth type thing, that if the price goes up, Drummond gets a bigger piece of the pie, which makes sense. Southern Coal is making more money, they're going to pay a little bit more money for the use of the space. Drummond could have insisted, couldn't it right? Yes, your honor, that fully conceded that better terminology could have been used in hindsight. Yeah, but wasn't. Instead, as Mr. Sterl testified, the party's intent was that it be the the peak price and that was not the price that Drummond now insists upon. His testimony was an entirely different measure, wasn't it? Isn't that his testimony? Well, his testimony as to what the contract actually said was yes, it does specifically say peak down. I thought he said that's what was intended. He also testified that the benchmark, there is only one benchmark and that's what they were intending to refer to. Right, and they weren't intending to refer to any other measure and that wasn't what he and the role he had intended and that it was an entirely different measure than what was intended. Wasn't that? I mean, let's be candid here. Drummond's problem was Mr. Sterl had retired, so he took an oath and he told it just like it was and it was really devastating to your client, wasn't it? His testimony. Well, that testimony certainly was relied on heavily by the district court. Okay. The testimony also from Mr. Sterl and from everyone else other than Southern Cole, if I may just briefly include Judge Wilson, was that there was only one benchmark. The reference to peak downs is like somebody my age or above from the South, when you used to refer to do you want to cope, it could mean Sprite, any other soda. Peak downs over time have become almost a monitor for what the benchmark was. I will concede it could have been drafted clearer, but that is why equitable reformation would have been appropriate and it was not addressed at all. Thank you, your honors. All right. Thank you, Mr. Wells. We'll hear from Mr. Hold on behalf of Southern. Yes, thank you, your honor. I am John Hoag. I rise on behalf of Southern Cole. I want to point out I'm up in Pittsburgh, Pennsylvania in 29 degrees. I want to first start with where reversible error occurred was at the summary judgment stage, but not as to what Mr. Wells just suggested. At the summary judgment stage, Judge Ray correctly found there was an ambiguity. The idea he had in front of him, first of all, that the parties agreed as to the definition of what was meant by peak downs metallurgical benchmark price. He then had this extraneous expert report that had nothing to do with the negotiations, the contract about trade usage. But as your honors know, under New York law, trade usage comes in as a question of fact, not of law. So when they introduce trade usage, they open the door to all at the summary judgment stage to all factual matters regarding trade usage or any other evidence that would interpret the language, the peculiar language used by the party. This is New York law. The existence and scope of trade usage must be proved as facts. Judge Ray correctly held there's an ambiguity, and we're going to go forward and try on that. Now, where I would suggest respectfully to Judge Time, I thought he could sever from the case parties' actions as to the price escalation clause at 6.14 from the rest of the contract. So he did not view the actions related to 6.14 as really related to actions regarding the contract. As a result, he found, well, look over here, you can continue to use the property. But that misses New York law on anticipatory repudiation, which I would argue or point out to Judge Carnes, we raised from the very beginning in our complaint that what occurred here was an anticipatory repudiation in that what Drummond did was to insist that once my client was able to discover what was going on, Drummond continued to insist that my client pay this newly found price that was not the agreed upon price. Sure, sure. I mean, that's what lawyers do, and that's what tough negotiators do. But that doesn't say we're not going to perform under the contract unless you do that. As a matter of fact, their letter assured you that they were ready, willing, and able to continue throughputing the coal, which they, by the way, did. I don't see, just speaking for me, any merit in your reference, two letters came out from Drummond that were signed by Mr. Stuerl, no less, that said, if you do not observe this pricing, we will find you in breach. And the one states... So they're threatening a lawsuit. Parties do that, as you know, all the time. All the time, but it's not unusual for parties to do that. That doesn't give the other party a license to say, aha, you've breached. Most respectfully, Your Honor, under the Court of Appeals of New York analysis, when one party insists that a new term of a contract must be followed or you will be in breach, which is what the letter said, that is, under New York law, an anticipatory repudiation. What's your best case on that? Best decision? The IBM case, which is the court of... Right. All right. But it wasn't true in IBM that the other party said, that'll be a breach, but we're going to continue to adhere to our obligations under the contract. Did they? Actually, it's a little obscure. The Court of Appeals affirmed the decision of the lower court and in the lower court was present. Factually, is what I see. You either go for, you must pay this new thing or you're in breach. Under New York law, Your Honor, under anticipatory repudiation, our client is not required to wait until the gates are slammed and we're out hundreds of thousands of tons of coal and can't serve our clients. You are if the opposing party says, but I want to tell you, we're going to keep throughputing your coal. Don't sweat. Sleep well at night. We just think that you're not following your obligations, but we're going to keep it. Well, again, I would refer you to the last paragraph of the Will Banks letter, which is what you're discussing. First of all, it said we had no legal right to withhold the payment of the excess money we had paid because they held, they overbilled on their newly found price mechanism. And to do so constitute the breach, it said. Don't have to wait again. They've already declared a breach. Under New York law, when they declare the breach, they have anticipatorily repudiated the agreement. That's what the IBM case and subsequent cases hold. And then again, Brahman also expects the amount of any applicable fee increase. If Southern chooses not to do so, it will be a breach, it said. Again, New York law of anticipatory repudiation doesn't require the party like Southern to wait to see what happens when they actually do declare. Having declared it will be a breach, we had the absolute right under New York law to end the contract. We don't have to wait till they slam the door shut. And that respectfully is where, because the judge was only looking at 6.14, he didn't analyze the nature of the contract. He said, well, yeah, look, you can continue using the property. Yes, but only if we pay what is now found to be a newly imposed contract term. When they put in a newly imposed contract term and insisted that that bill be paid, that under New York law was a breach. Let me ask you this about IBM credit financing. I have it that that decision said a proposal of or a demand for performance on terms that go beyond the contract. That's what you're alleging here. Yes, sir. Repudiation, unless it is coupled with a threat of non-performance, if those terms are not accepted. And not only that, but whether there is a threat of non-performance is a factual issue, which was determined against you. What is that? Did I get the quote wrong from IBM credit? I'm sorry, I don't have it in front of me, but that sounds absolutely correct. And I wouldn't doubt it. Okay, so the question is whether there was clear error here in the termination that Drummond didn't issue a threat of non-performance if its interpretation of the contract was not accepted. It has to be clear error or we go with the fact finding. I would suggest, again, there was clear error because IBM says that if you insist on an untenable interpretation of the contract, that just happened here, that is a breach. Yeah, but it didn't say and we will not perform. As you know, if one side breaches the contract, the other side can perform and then sue for damage. Or under anticipatory repudiation, we can disavow the contract. That's what New York law says. Unless not, according to the language I just read in your case, unless there's a threat of non-performance, if the terms are not accepted. And I read the letter, I don't see a threat of non-performance, I see an assurance of performance. But in any event, the point is, it has to be error to find the evidence of a threat of non-performance. And I don't see how you can. That's my concern with your case on the merits as opposed to the attorney, I'm sorry, on the contract issues as opposed to the attorney's fees issue. Let me ask you this about the attorney's fees since I think we've spent a good bit of time on that. You had a cost appeal for attorney's fees to you. But in your brief to us, you said that the district court got it entirely correct on attorney's fees, which would include the denial of attorney's fees to you. So you've abandoned any argument that you were entitled to attorney's fees, haven't you? No, Your Honor. What we argued or attempted to argue, I guess, was that when the judge found that there were two defaulting parties, and the judge, as Judge Wilson indicated, basically equated defaulting parties to prevailing parties, there was no prevailing party. When he found both parties in default, neither party gets attorney's fees. What I was arguing is, if you reverse and find in our favor, then we would be entitled to attorney's fees. I don't see that in that latter sentence you've added. Your brief, red brief at 40. You note that one of your arguments to the court was no party should be awarded attorney's fees. Instead, the court accepted that analysis, which determination is correct. So you were saying that was correct in determining that no party should be awarded attorney's fees. Does it mean it was incorrect in deciding that you should have been awarded attorney's fees? The record before the judge at that time was that there were two defaulting parties. If you would find, or when you find, in Southern Cole's favor, and would send us back, then there will only be one defaulting party, and that would be at that time to apply for attorney's fees. My time is up. I see your time is up. Thank you, Your Honor. Good morning. May it please the court. My name is Stephan Passantino, and I'm appearing very briefly as counsel to the appellee, Governor James Justice. Appellant has argued that the lower court erred when it didn't award appellant attorney's fees and litigation costs in this action under the separate terms of the guarantee document that Governor Justice signed. And argument is that this is a misreading of the fee provision of the guarantee. The guarantee itself, as the record reflects, is a typical guarantee document. As such, the guarantor here guaranteed complete performance by Southern Cole when due under the backstop against non-performance by Southern. And the adjudication of that is not complete. It's what brings us here now. And in making their argument, they're misreading the attorney fee clause of that guarantee. That document explicitly only obligated the guarantee guarantor to indemnify the fees and the expenses that would be incurred by Drummond in this case in enforcing or asserting their rights under the guarantee, which is to say that only if you have the outcome of the underlying case adjudicated against Southern, and then they were to come towards us under the guarantee, and we were to say, no, we are not going to perform, and they had to bring an action against us in order to enforce those rights under the guarantee. In that case, would they be entitled under the guarantee to recover their attorney's fees for having to bring an action against Governor Justice for not performing his obligation under the contract? Here, we're not there yet. They didn't need to name us. They didn't need to name Governor Justice in this action. All that needed to happen is for us to have an adjudication of the underlying merits of the case, at which time then and only then would our contractual obligations under the contract come to bear, and that is our argument. Thank you, Your Honor. All right. Thank you, Mr. Passantino. Mr. Wells, you've reserved some time for rebuttal. Thank you, Your Honors. It sounds like the two issues to rebut would be the repudiation argument and the attorney's fees under the guarantee. As to repudiation, Judge Carnes, I think, hit it on the head. That, along with almost every other argument on appeal raised by Southern Cole, are factual issues, all of which reviewed for clear error, and there's just not a record here, in my humble opinion, that clear error could be shown. Well, you say, Mr. Wells, that there's no anticipatory breach because Grumman did not say it no longer performed its obligations under the contract, but Mr. Hogue says that New York law provides that if there's a threat of non-performance, that could amount to an anticipatory breach. There's a difference between non-performance and a threat of non-performance, isn't there? There would be, but the New York case that Mr. Hogue actually say that, Your Honor, the IBM credit case says the assistance on an untenable interpretation of a key contractual provision and refusal to perform otherwise constituted an anticipatory breach. There was no refusal in this case, and really, in the March letter, which is the only letter that was challenged below and here in the briefs, there was no threat of non-performance. This is the way we believe the contract reads. This is what we think you owe. If you do not pay, we will consider that a breach, and we reserve all our rights. But, counsel, the threat of non-performance is sufficient, is it not? I mean, did I misquote the language out of IBM credit? Proposal of or a demand for performance on terms that go beyond the non-performance if those terms are not accepted. Now, I don't see how you can find a threat of non-performance in that letter, but the standard is unless it is coupled with a threat of non-performance. Isn't that what the case says? Your Honor, the case I'm looking at, IBM credit v. Mazda Motor, the opinion is only about three paragraphs long, and I do not see the word threat, but regardless, even if the threat is sufficient. I'm sorry. I'm sorry. You're right. I was reading O'Connor, the language from the O'Connor decision, which said that, not IBM, but in any event, the district court found, at least implicitly, there was no threat of non-performance here, and that's not clearly erroneous. I don't see how you could read the letter as to possibly read the letter as threatening non-performance. We're ready. Bring your coal on. The implicit threat there is we'll sue you later for damages. That's correct, Your Honor, and in fact, the coal still kept coming and kept being used by Southern Coal, so even if there was a repudiation, it was waived by the fact of continued performance under the contract and continued acceptance of benefits. Moving on to the guarantee, repudiation, as we've argued, is not an issue for the guarantee. It's an absolute and unconditional guarantee under New York law. It waives all defenses other than payments or performance. We've cited a litany of cases that really are more very egregious circumstances where a different court had found, for example, a liquidated damages clause to be an unenforceable penalty, could not be enforced against the principal obligor, but because the guarantor had signed an unconditional absolute guarantee waiving all defenses, he could not take advantage of it and was still liable under what another court had found was an unenforceable penalty, so that's another problem with the repudiation argument because it does not reach the guarantee, but as to the attorney's fees on the guarantee, the guarantee explicitly waives any presentment, any of these predatory acts that Mr. Pesentano raised. The guarantee does not require us to sue Southern Coal first and then only if we are unable to get payment, then go against Mr. Justice. The guarantee in Section 5 specifically states that we can go against the guarantor immediately without ever suing Southern Coal, so we disagree with that interpretation and I'm not sure I've read that interpretation in the briefs either. I see my time is up. Is there, there's no question about Southern Coal's solvency, is there? Well, I don't know. We were not allowed to do any post-judgment discovery, but they did post a bond. Well, what I'm talking about is we only reach that issue if you lose on the, your position against Southern Coal, right, on the attorney's fees? Well, I think really Southern Coal could, the attorney's fees on the guarantee is completely separate and apart from the... I know, but if you get it from Southern Coal, you don't get to get it from Mr. Justice. Correct. We cannot, we will not recover it twice. That's correct. So are you asking, are you asking then if we agree with, are you asking us to say you pick one? Is that what you're saying? You can go against either one? We believe you can go against either one or if the court found, you know, the defaulting party, as Mr. Hogue argued, if the court was defined, well, there were two defaulting parties, therefore the underlying agreement attorney fee provision is washed out as the district court found. You still go over to the guarantee, which has no defaulting party and there is no breach of Drummond under the guarantee and it stands on its own and attorney's fees would be awardable against Jim Justice, but only one recovery regardless of how the court rules. Thank you very much, your honors. All right. Thank you, counsel. And that completes our docket for this week. This court is adjourned. Thank you, your honors.